**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4588
_____

GIANT EAGLE, INC.,

　　　　　　　　　　　　　Appellant

v.

UNITED FOOD & COMMERICAL WORKERS UNION LOCAL 23
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 12-00987)
District Judge: Honorable Arthur J. Schwab
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 26, 2013
_____

Before: CHAGARES, VANASKIE, and SHWARTZ, Circuit Judges.

(Opinion Filed: October 16, 2013)
_____

OPINION
_____

SHWARTZ, Circuit Judge.

Giant Eagle, Inc. ("Giant Eagle") appeals an order of the District Court enforcing

a labor arbitration award in favor of United Food & Commercial Workers Union, Local

23 (the "Union"). In his award, the arbitrator found that the collective bargaining

agreement (the "Agreement") required Giant Eagle to obtain the consent of the Union in

order to increase the wages of individual employees and the failure to do so violated the Agreement. Giant Eagle argues that the arbitrator both ignored the plain language of the Agreement and impermissibly considered an issue that the parties did not submit to him when he found the Union's consent was required. We will affirm.

I.

As we write principally for the benefit of the parties, we recite only the essential facts and procedural history. Giant Eagle is a supermarket chain with stores in Pennsylvania, Ohio, West Virginia, and Maryland. The Union was the exclusive collective bargaining representative for, among other entities, certain units of Giant Eagle employees at the Edinboro, Pennsylvania store.

In early 2011, Giant Eagle gave wage increases and higher starting wages to certain employees of the Edinboro store. The Union filed a grievance, stating that Giant Eagle had failed to notify the Union before it increased the wages. An arbitration hearing was held and the arbitrator thereafter issued an award, finding that the language of the Agreement was ambiguous but that the parties' negotiation history and past practices showed that Giant Eagle had violated the Agreement by granting individual employees wage increases without obtaining the Union's approval. The arbitrator directed Giant Eagle to rescind those wages.

Giant Eagle then filed a complaint in the District Court to vacate the award and the Union filed a counterclaim to enforce it. The parties filed cross-motions for summary judgment. The District Court granted the Union's motion, finding support for the arbitrator's conclusion that the language was ambiguous and that consent was required in

2

order to provide the higher pay. This appeal followed.

## II.

The District Court had jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, the Federal Arbitration Act, 9 U.S.C. § 10, and 28 U.S.C. §§ 1331 and 1337. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's order resolving cross motions for summary judgment and apply the same standard as the district court. Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1291 (3d Cir. 1996).

There is a strong presumption under the Federal Arbitration Act in favor of enforcing arbitration awards. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). An award is presumed valid and is subject to attack only on the grounds listed in 9 U.S.C. § 10,[1] or if enforcement of the award is contrary to public policy. W.R. Grace and Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum and Plastic Workers of America, 461 U.S. 757, 766 (1983).

---

[1] 9 U.S.C. § 10 states, in relevant part:
> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>> (1) where the award was procured by corruption, fraud, or undue means;
>> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Therefore, our review of an arbitration award is quite narrow and we must give substantial deference to the arbitrator's award. Id. at 765. We generally "enforce an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it reflects a manifest disregard of the agreement, totally unsupported by principles of contract construction." Exxon Shipping Co. v. Exxon Seamen's Union, 993 F.2d 357, 360 (3d Cir. 1993) (citation and internal quotation marks omitted). If an arbitration award meets this standard, we will not disturb the award "even if [we] find[] the basis for it to be ambiguous or disagree[] with [the arbitrator's] conclusions under the law." Citgo Asphalt Refining Co. v. Paper, Allied–Indus., Chem., and Energy Workers Int'l Union Local No. 2–991, 385 F.3d 809, 816 (3d Cir. 2004) (citation and internal quotation marks omitted).

III.

Giant Eagle seeks to vacate the arbitration award on two grounds: (1) that the arbitrator's decision ignored the plain language of the Agreement; and (2) that the arbitrator exceeded his authority by deciding an issue the parties did not submit to him.

A.

We must first decide whether the arbitrator's conclusion is supported, in any way, by a rational interpretation of the Agreement. Under the deferential standard, we would only disturb the arbitrator's finding if it did not "draw its essence" from the Agreement. United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir. 1995). An award draws its essence from a collective bargaining agreement if its

4

"interpretation can <u>in any rational</u> way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." <u>Id.</u> at 379-80 (citation and internal quotation marks omitted). We "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." <u>United Paperworkers Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 36 (1987). Instead, we "ask merely whether the parties to the collective bargaining agreement got what they bargained for, namely an arbitrator who would . . . provide an interpretation of the contract that was rationally based on the language of the agreement." <u>Brentwood Med. Assocs. v. United Mine Workers of America</u>, 396 F.3d 237, 242 (3d Cir. 2005).

The language at issue can be found in Article 14 of the Agreement:

<u>ARTICLE 14 - Wages</u>:

Wages shall be paid in accordance with Appendix "A"[2] which is attached hereto and is made a part of this Agreement.

14.1 <u>Additional Compensation</u>

The Company can increase starting rates, grant bonuses, individual increases, and any other forms of incentives. The Company can establish a profit sharing plan and/or an employee discount plan. The increases can be done by department and/or store. The employer agrees to notify and/or meet with the union to discuss these matters prior to implementation. All of these changes can be done at the Company's sole discretion and any of these changes may be rescinded and/or modified.
. . .
14.3 <u>Excess Rates</u>

---

[2] Appendix "A" lists the wage schedule for the different classes of employees, indicating when these employees are due for wage increases.

5

The Employer shall not pay any wage rates in excess of those listed in Appendix "A" of this Agreement without first discussing with and obtaining the approval of the Union, except as provided in 14.1.

App. Vol. II 117-19. Giant Eagle contends that this language is unambiguous. It claims that Article 14.1 applies to wage increases by department, store, or individuals and that it may grant such increases at its "sole discretion." Giant Eagle asserts that Article 14.3, which omits any employer discretion, applies to wage increases across all of its stores. The Union, meanwhile, contends that the language is ambiguous because there is a direct conflict between the first and third sentences of Article 14.1, wherein the first sentence permits the company to increase compensation, but the third sentence seems to allow this only when done "by department and/or store."

Here, the arbitrator considered the language and found it was ambiguous. This conclusion was rational. First, Article 14.1 itself could rationally be viewed as internally ambiguous. The first sentence of Article 14.1 allows for "individual increases," but the third sentence states that the increases "can" be done by "department and/or store." It is not clear if the word "individual" in the first sentence is referring to individual employees or if it is referring to individual departments and stores.

Second, a review of Articles 14.1 and 14.3 also exposes a possible ambiguity. The language in Article 14.3 sets a cap for wages the company could pay without obtaining the Union's approval, but then the Agreement provides an exception set forth in Article 14.1, which seems to allow increases in compensation at the store or department level in the company's "sole discretion." As applied, it could swallow the maximums set forth in

6

the Agreement so long as the increases were given incrementally, on a store-by-store basis, rather than by one single company-wide pronouncement. Wage increases without the Union's input would be permitted only if done for small groups at a time but would be barred if done for everyone at once. This conflict between the two provisions may reflect a second ambiguity. See Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980).

Because the arbitrator's finding of ambiguity was rational, he was authorized to look to outside sources to decipher the parties' intent. See Boise Cascade Corp. v. Paper Allied-Indus., Chem. and Energy Workers, Local 7-0159, 309 F.3d 1075, 1082-83 (8th Cir. 2002) (collecting circuit cases for this principle). The arbitrator here looked at the negotiation history and the past practices of the parties, including testimony from the Union negotiators of the Agreement and twenty-one emails in which Giant Eagle asked the Union for permission to give an individual employee an increase, all of which pointed toward an understanding that the parties intended to give the Union the right to object to individual wage increases. The District Court appropriately declined to disturb the arbitrator's conclusion that Article 14 is ambiguous and that it was proper for him to consider the parties' past conduct to find that the parties intended to have the Union consent to wage increases for individual employees.

B.

The second issue before us is whether the arbitrator overstepped his authority by reaching an issue that Giant Eagle asserts was not properly before him. Giant Eagle contends that the arbitrator exceeded his authority when he addressed the question of

7

whether the Agreement required the Union's consent to increases described in Article 14.1, instead of deciding only whether the Union was entitled to notice. To support its contention, Giant Eagle argues that the grievance[3] and demand for arbitration[4] only stated that Giant Eagle failed to notify the Union before granting higher rates of pay to less senior members and did not mention the issue of obtaining the Union's consent. Meanwhile, the Union argues that the grievance more broadly claimed a violation of Article 14 and that the issue of consent came up both during the arbitration hearing and in the parties' post-hearing briefs.[5]

---

[3] In relevant part, the March 8, 2011 initial grievance states:

> Violation of Contract Article: 14 and Appendix A
> Brief Explanation/Details: Company failed to <u>notify</u> union in regards to granting higher rates of pay for less senior members. Additionally, there has been a lack of response from the Company during my investigation of this issue.

App. Vol. II 132 (emphasis added).

[4] The Union sent Giant Eagle a letter on June 7, 2011, officially demanding arbitration. In relevant part, it states:

> [T]his grievance is NOT SETTLED. Please be advised that Local 23 is submitting this grievance to arbitration. The issue for arbitration is [Giant Eagle] failed to <u>notify</u> the Union prior to granting experienced pay rates resulting in less senior members making more than the senior members . . . . [T]his letter is the Union's final notice of its intent to arbitrate this grievance.

App. Vol. I 15 (emphasis added).

[5] The post-hearing brief from Giant Eagle included the following question:

> Does the "Additional Compensation" Language of Article 14.1 in the Edinboro CBA clearly and unambiguously grant to Giant Eagle the right, in its "sole discretion," to unilaterally "increase starting rates, grant bonuses, individual increases, and any other forms of incentives," and, therefore render the Union's extrinsic "evidence" that conflicts with the written agreement unnecessary and irrelevant?

An arbitrator's authority to decide issues extends only to the issues actually submitted. Matteson v. Ryder Sys., Inc., 99 F.3d 108, 114 (3d Cir. 1996). We have cautioned against "attach[ing] too great significance to documents drafted early in the dispute," such as the initial grievance, and observed that the issues to be decided are those reflected in the evidence and arguments of the parties at the arbitration hearing. Id. at 115 (holding that an arbitrator stepped outside his authority when he decided an issue that had been focused on earlier in a grievance process but not in the final hearing). In keeping with our standard of review, we give deference to "an arbitrator's interpretation of the issue submitted." Id. at 112 (citation omitted).

Here, while the grievance and demand for arbitration speak only of a lack of notice, the evidence at the hearing and the post-hearing briefs explicitly address the consent issue. Cf. Sun Ship, Inc. v. Matson Navigation Co., 785 F.2d 59, 62 (3d Cir. 1986) ("[The parties] submitted to the arbitrators the very questions that [appellant] now says should not have been answered."). During the hearing, each side produced witnesses to testify about the purpose of Article 14's language and whether it was intended to require the Union's consent. Additionally, each side's post-hearing brief discussed whether the Agreement language was ambiguous with regard to whether consent was needed for individual increases. Faced with the evidence and post-hearing

_____

App. Vol. II 40. The post-hearing brief from the Union included the following question:

> Whether the Employer violated 14.1 of the Labor Agreement by giving individual employees wage increases without obtaining the approval of the Union, and if so, what shall be the remedy?

App. Vol. II 3.

9

briefs, the arbitrator found that the issue of obtaining the Union's consent was a question the parties had submitted. Furthermore, it only makes sense that the issue of consent was also addressed because the grievance was based on an alleged violation of Article 14, which includes language that speaks of both the company's "sole discretion" to give wage increases and the need to secure the Union's approval concerning wages. Moreover, it is logical for the arbitrator to have considered notice and consent in this context as it invokes changes to a key condition of employment, namely wages, in which the Union would want to have input in order to, at a minimum, ensure its members are treated equally. Thus, even if the initial issue could be viewed as having morphed from notice to consent at the hearing, the language of Article 14 was the heart of the dispute and the arbitrator was within the scope of his authority to interpret the issue as he did to determine the full meaning of the Article. Therefore, his decision to consider the issue of consent was rational and it was appropriate for the District Court to leave this aspect of the award undisturbed, too.

## IV.

For the foregoing reasons, we will affirm the District Court's order.